FILED

2016 Oct-28 PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

JOHN JINRIGHT,

      Plaintiff,

v.                                                                 Civil Action No.

DEAN TRANSPORTATION, INC.,

      Defendant.                                        JURY TRIAL DEMANDED

## COMPLAINT

### I.    JURISDICTION

1.     This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §1331, 1343(4), 2201, 2202 and 29 U.S.C. §2617(a)(2). This is a suit authorized and instituted pursuant to the "Family and Medical Leave Act of 1993," 28 U.S.C. §§2601, *et. seq.* ("FMLA"). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

### II.    PARTIES

2.     Plaintiff JOHN JINRIGHT (hereinafter "Plaintiff"), is a resident of Athens, Limestone County, Alabama and performed work for the Defendant in the

1

counties composing the Northern District of Alabama during the events of this case. Pursuant to 28 U.S.C.§ 1391(b), venue for this action lies in the Northern District, Northeastern Division.

3.     Defendant, DEAN TRANSPORTATION, INC. (hereinafter "Defendant") is an entity subject to suit under 28 U.S.C. §1331 and 29 U.S.C. §2617(a)(2). Defendant employed at least fifty (50) persons for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year.  Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

## III.   STATEMENT OF FACTS

4.     Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 3 above.

5.     Defendant hired Plaintiff in April 1995.

6.     At all times while employed with Defendant, Plaintiff performed his job duties in a competent or better manner.

7.     Defendant operates Purity Dairies in Madison, Tuscumbia, and Albertville, Alabama.

8.     Defendant terminated Plaintiff on August 25, 2016.

9.     Ray Campbell was Plaintiff's supervisor during the last year of Plaintiff's employment.

## IV.  <u>COUNT ONE – FMLA – Interference</u>

10.  Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 9 above as if fully set forth herein.

11.  As of October 15, 2015, Plaintiff was an FMLA qualified employee as Defendant employed Plaintiff for more than one year and Plaintiff had worked more than 1,250 hours during the preceding twelve months.

12.  As of October 15, 2015, Defendant was an FMLA covered employer as it employed more than fifty (50) employees within 75 miles of Plaintiff's work location.

13.  On October 15, 2015, Plaintiff informed Ray Campbell that Plaintiff's father's suffered from dementia and that his health was deteriorating.

14.  Plaintiff's father's physicians diagnosed his father with early stage dementia.

15.  Plaintiff asked Campbell for a flexible schedule in regard to the start of his shift and time to commence his delivery route.

16.  Campbell informed Plaintiff that he was to report to work at 4:00 a.m. without exception.

17.  Campbell failed to provide Plaintiff with the FMLA Form to allow Plaintiff's father's physician to certify his father suffered from a serious health condition.

18. Campbell failed to provide Plaintiff with the FMLA Notice of his Rights and Responsibilities.

19. Campbell failed to provide Plaintiff with the FMLA Designation Notice.

20. From October 2015 through August 25, 2016, Campbell informed Plaintiff that tardiness would result in termination of Plaintiff's employment.

21. From October 2015 through August 25, 2016, and presently, Plaintiff is a caregiver for his father.

22. Plaintiff spends the night at his father's house one time per week to ensure his safety during the night.

23. Plaintiff prepares meals for his father.

24. Plaintiff ensures his father follows a proper medication schedule.

25. Plaintiff provides basic hygiene care for his father, including bathing, shaving, and cleaning.

26. Plaintiff performs laundry duties for his father.

27. Plaintiff transports his father to and from healthcare providers.

28. Plaintiff performs household chores such as cutting the grass, washing the dishes, and other odd jobs.

29. On June 7, 2016, Plaintiff spoke with Defendant's Area Manager, Jim Cooper, about his need to care for his father.

4

30.    Cooper informed Plaintiff that "you need to start your route at 4:00 a.m. so you can finish your work in 10 hours a day. If you work another 14 hour day, I will fire you! We have to have someone to be an example, so other will get their hours down!" Cooper's response to Plaintiff about his father's condition was "Sorry."

31.    On June 22, 2016, Plaintiff contacted Defendant's H.R. Generalist, Delonda Payne, about his situation regarding his father's condition and his own working schedule.

32.    Payne informed Plaintiff that she would "look into the matter" and talk with the supervisors and managers and then call Plaintiff back at a later date.

33.    Payne did not call Plaintiff back about his concerns.

34.    On August 24, 2016, Payne telephoned Plaintiff and informed him not to go to work on August 25, 2016.

35.    On August 25, 2016, Payne provided Plaintiff's with a separation notice stating the reason for termination was "Employee was terminated due occuring 10 points within a rolling 12 months."

36.    Plaintiff's absences and tardies occurred due to his tending to his father's medical needs.

37.    As a result of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## V.   COUNT TWO – FMLA - Retaliation

38.   Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 37 above as if fully set forth herein.

39.   As of October 15, 2015, Plaintiff was an FMLA qualified employee as Defendant employed Plaintiff for more than one year and Plaintiff had worked more than 1,250 hours during the preceding twelve months.

40.   As of October 15, 2015, Defendant was an FMLA covered employer as it employed more than fifty (50) employees within 75 miles of Plaintiff's work location.

41.   On October 15, 2015, Plaintiff informed Ray Campbell that Plaintiff's father's suffered from dementia and that his health was deteriorating.

42.   Plaintiff's father's physicians diagnosed his father with early stage dementia.

43.   Plaintiff asked Campbell for a flexible schedule in regard to the start of his shift and time to commence his delivery route.

44.   Campbell informed Plaintiff that he was to report to work at 4:00 a.m. without exception.

45.   Campbell failed to provide Plaintiff with the FMLA Form to allow Plaintiff's father's physician to certify his father suffered from a serious health condition.

6

46. Campbell failed to provide Plaintiff with the FMLA Notice of his Rights and Responsibilities.

47. Campbell failed to provide Plaintiff with the FMLA Designation Notice.

48. From October 2015 through August 25, 2016, Campbell informed Plaintiff that tardiness would result in termination of Plaintiff's employment.

49. From October 2015 through August 25, 2016, and presently, Plaintiff is a caregiver for his father.

50. Plaintiff spends the night at his father's house one time per week to ensure his safety during the night.

51. Plaintiff prepares meals for his father.

52. Plaintiff ensures his father follows a proper medication schedule.

53. Plaintiff provides basic hygiene care for his father, including bathing, shaving, and cleaning.

54. Plaintiff performs laundry duties for his father.

55. Plaintiff transports his father to and from healthcare providers.

56. Plaintiff performs household chores such as cutting the grass, washing the dishes, and other odd jobs.

57. On June 7, 2016, Plaintiff spoke with Defendant's Area Manager, Jim Cooper, about his need to care for his father.

58.    Cooper informed Plaintiff that "you need to start your route at 4:00 a.m. so you can finish your work in 10 hours a day. If you work another 14 hour day, I will fire you! We have to have someone to be an example, so other will get their hours down!" Cooper's response to Plaintiff about his father's condition was "Sorry."

59.    On June 22, 2016, Plaintiff contacted Defendant's H.R. Generalist, Delonda Payne, about his situation regarding his father's condition and his own working schedule.

60.    Payne informed Plaintiff that she would "look into the matter" and talk with the supervisors and managers and then call Plaintiff back at a later date.

61.    Payne did not call Plaintiff back about his concerns.

62.    On August 24, 2016, Payne telephoned Plaintiff and informed him not to go to work on August 25, 2016.

63.    On August 25, 2016, Payne provided Plaintiff's with a separation notice stating the reason for termination was "Employee was terminated due occuring 10 points within a rolling 12 months."

64.    Plaintiff's absences and tardies occurred due to his tending to his father's medical needs.

65.    Defendant's supervisor Ray Campbell did not report the absences of other route drivers, including the absences and tardies of Eric Johnson.

8

66.    Mr. Johnson's clock-in and clock-out records and the ZETA route delivery system show that Johnson missed multiple days of work such that would have exceeded Defendant's allowable amount of missed absences under Defendant's attendance point policy.

67.    But for Plaintiff's need for FMLA leave, Defendant would not have terminated Plaintiff's employment.

68.    Defendant violated the FMLA by retaliating against Plaintiff by terminating Plaintiff's employment.

69.    As a result of Defendant's violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## VI.    **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays for the following relief:

A.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the *Family and Medical Leave Act*;

B.    Enter an Order requiring the Defendant to make Plaintiff whole by awarding him reinstatement to the position he would have had, had he not been

terminated, or in the alternative the equitable relief of front pay; and,

C.    Award Plaintiff back pay, together with employment benefits, front pay, nominal damages, special damages, liquidated damages, and attorneys' fees and costs, and any additional relief as may be determined by the Court to which Plaintiff is entitled.

_____
David R. Arendall

_____
Allen D. Arnold

OF COUNSEL:
ARENDALL & ARNOLD
2018 Morris Avenue, Third Floor
Birmingham, AL 35203
205.252.1550 – Office
205.252.1556 – Facsimile

**PLAINTIFF REQUESTS A TRIAL BY STRUCK JURY.**

_____
Of Counsel

**SERVE DEFENDANT:**

Dean Transportation, Inc.
c/o Agent for Service of Process
C T Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

10